UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | \* | CR. 08-30009 |
| Plaintiff, | \* | |
| | \* | REPORT AND RECOMMENDATIONS |
| -vs- | \* | FOR DISPOSITION OF MOTION татсрсс |
| | \* | SUPPRESS AND SUPPLEMENT THERETO |
| ROBERT L. ERICKSON, | \* | |
| Defendant. | \* | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

FILED APR 18 2008

Defendant, Robert L. Erickson, has filed a Motion to Suppress and Supplement to it along with supporting Memoranda, Docket Nos. 18, 19, 29, 32. In his Motion and Supplement thereto, Defendant seeks to suppress all evidence that was obtained following, and as a result of, his arrests on October 29, 2007 and January 2, 2008 on the ground and for the reason that such evidence was obtained by non-commissioned tribal officers who stopped and arrested him without probable cause and any legal authority to act. He also seeks to prohibit the Government from introducing evidence of other alleged prior crimes, wrongs or acts because such evidence stems from arrests made by individuals who were non-commissioned police officers.

The Government filed Responses to the Motion and its Supplement, Docket Nos. 21, 31. The Court subsequently held a two-day evidentiary hearing to address Defendant's claims, Docket Nos. 33, 36. Because Defendant's Motion is a dispositive one, this Court is only authorized to determine the same on a report and recommendation basis. See 28 U.S.C. §636(b)(1). After careful review of the evidence, testimony and legal authorities presented,

the Court does now make and propose the following report and recommendation for disposition of the Motion.

I.

Defendant was arrested on October 29, 2007 and later on January 2, 2008 by police officers for the Rosebud Sioux Tribe (RST). These arrests eventually led to the five assault related offenses Defendant is charged with now in federal court.

Nearly two decades ago, RST established requirements for becoming a commissioned police officer to perform law enforcement functions within the exterior boundaries of the Rosebud Indian Reservation. See RST Ordinance No. 91-05, a copy of which is attached hereto. Many tribal police officers, however, did not have RST commissions in 2007 and early January, 2008, including some of the officers who were involved in Defendant's October 29 and January 2 arrests and the seizure of items from him those days. Defendant maintains that any non-commissioned tribal officer was without legal authority to wield firearms, arrest, detain, search, seize evidence or engage in any other law enforcement activities set forth in the tribal commission ordinance. Citing Weeks v. United States, 232 U.S. 383 (1914) and United States v. Leon, 468 U.S. 897 (1984), Defendant contends that he was illegally stopped and arrested on October 29 and January 2 and that as such, any fruits derived therefrom were "tainted" and must be excluded under the Fourth Amendment.

A.

Technically, the Fourth Amendment does not apply to tribal officers who stop and arrest individuals and search for evidence within Indian territory. United States v. Schmidt, 403 F.3d 1009, 1013 (8th Cir. 2005); United States v. Clifford, 664 F.2d 1090, 1091, n.3 (8th

2

Cir. 1981). Nonetheless, the Indian Civil Rights Act ("ICRA"), imposes the same standards on tribal officers as the Fourth Amendment. Id; United States v. Becerra-Garcia, 397 F.3d 1167, 1171 (9th Cir. 2005), cert. denied, 547 U.S. 1005 (2006); see also United States v. Lester, 647 F.2d 869, 872 (8th Cir. 1981); People v. Ramirez, 148 Cal. App. 4th 1464, 1469-76, 56 Cal. Rptr.3d 631, 635-41 (Cal. Ct. App. 2007).[1] This Court therefore will analyze the reasonableness of Defendant's stop and arrest and the search and seizure of evidence obtained therefrom under Fourth Amendment precedent already developed which produces the same result as an analysis under the ICRA. Becerra-Garcia, 397 F.3d at 1171.

B.

In an attempt to cloud this Court's Fourth Amendment lens, the Government asserts that irrespective of their status as officers with the RST, the individuals who arrested Defendant on October 29 and January 2 had the authority to do so as private citizens. The Court disagrees.

The Fourth Amendment applies to a search or seizure conducted by a private citizen only if that individual is "acting as an agent of the Government or with the participation or knowledge of any governmental official." United States v. Jacobsen, 466 U.S. 109, 113 (1984) (internal quotations omitted); see also Coolidge v. New Hampshire, 403 U.S. 443, 487 (1971) (explaining that a private search may be converted into governmental action only if the private actor is "regarded as having acted as an 'instrument' or agent of the state").

---

[1] The ICRA states in pertinent part as follows: "No Indian tribe in exercising powers of self-government shall . . . violate the right of the people to be secure in their persons, houses, papers and effects against unreasonable search and seizures." 25 U.S.C. §1302(2).

3

Courts look to several factors in determining whether a private citizen was acting as an agent of the government. "Chief among these are whether the government had knowledge of and acquiesced in the intrusive conduct; whether the citizen intended to assist law enforcement agents or instead acted to further his own purposes; and whether the citizen acted at the government's request." United States v. Smith, 383 F.3d 700, 705 (8th Cir. 2004) (citing United States v. Malborough, 922 F.2d 458, 462 (8th Cir. 1990)), cert. denied, 547 U.S. 1022 (2006); see also United States v. Miller, 152 F.3d 813, 815-16 (8th Cir. 1998).

Here, the government entity – the RST Police Department – knew of and was privy to the activities of the arresting officers. The officers stopped and arrested Defendant to enforce RST criminal laws, not to effect some personal benefit or end. United States v. Ziegler, 136 F.Supp.2d 981, 991 (D.S.D. 2001). There can be little doubt that the officers acted as government agents for purposes of the Fourth Amendment. Becerra-Garcia, 397 F.3d at 1172; State v. Benefiel, 131 Idaho 226, 228, 953 P.2d 976, 978, cert. denied, 525 U.S. 818 (1998); see also United States v. Roy, 408 F.3d 484, 490-91 (8th Cir. 2005). This being the case, Fourth Amendment law applies and will be used to resolve Defendant's suppression Motion.

### C.

The evidence clearly indicates that the officers who stopped and arrested Defendant on October 29 and January 2 were commissioned by RST (and had cards issued by the Tribe evidencing this in their possession) at the time.[2] Accordingly, Defendant's claim, to the

---

[2]Officers William Cummings and Calvin Waln, Jr. both had been issued commission
(continued...)

4

extent that it seeks relief based on ultra vires conduct on the part of the officers, fails for this reason alone. See Ziegler, 136 F.Supp.2d at 986-88, 990-91.

Regardless, whether tribal officers, as a matter of RST law, were authorized to stop and arrest Defendant and search and seize evidence stemming from the same is an issue the Court need not decide. Indeed, even if some or all of the officers who participated in the apprehension of Defendant and the taking of property were not lawfully commissioned RST officers, this still does not require the suppression of evidence as prayed for in Defendant's Motion.

(i)

As a general rule, evidence will only be excluded in federal court when it violates federal protections, such as the Fourth Amendment, and not in cases where the evidence is tainted by reason of a tribal law violation. United States v. Hornbeck, 118 F.3d 615, 617 (8th Cir. 1997); Becerra-Garcia, 397 F.3d at 1173; see also United States v Male Juvenile, 280 F.3d 1008, 1023 (9th Cir. 2002) ("[W]e reject the contention that tribal law should govern the admissibility of statements in federal court. Federal law governs federal proceedings."). The question of whether evidence obtained by tribal officers, allegedly as part of an unreasonable search and seizure, may be used against a defendant in a federal trial "is to be judged as if the search and seizure had been made by federal officers." Hornbeck, 118 F.3d at 617 (quoting Preston v. United States, 376 U.S. 364, 366 (1964)); see also United States

---

²(...continued)
cards, for two-year terms, in April, 2006. Mot. Hrg. Tr. 289-91, 301, 424-25, 445-47; Mot. Hrg. Ex. 8.

v. Bell, 54 F.3d 502, 504 (8th Cir. 1995) (holding that "the district court should not have looked to [state] law in deciding the lawfulness of [the defendant's] arrest" and directing the court, on remand, to "evaluate the case as if federal officers had stopped [the defendant]"). Where the evidence seized by tribal officers is in conformity with the Fourth Amendment, such evidence will not be suppressed in a federal prosecution even if tribal law has been violated. Hornbeck, 118 F.3d at 617; Becerra-Garcia, 397 F.3d at 1173-74; see also United States v. Timley, 443 F.3d 615, 624 (8th Cir.) ("Evidence seized by state officers in conformity with the Fourth Amendment will not be suppressed simply because the underlying search warrant failed to conform to state law."), cert. denied, 127 S.Ct. 299 (2006); Bell, 54 F.3d at 504 ("A federal court generally does not look to state statutes to assess the validity of an arrest, search or seizure under the Fourth Amendment . . . . [W]e do not think Fourth Amendment analysis requires reference to an arrest's legality under state law . . . . An arrest by state officers is reasonable in the Fourth Amendment sense if it is based on probable cause . . . ."); see generally United States v. Chavez-Vernaza, 844 F.2d 1368, 1374 (9th Cir. 1987) ("evidence seized in compliance with federal law is admissible without regard to state law"); 1 W. LaFave, Search and Seizure, §1.5(b) at 167-68 n. 61 (4th ed. 2004 & 2007-08 Supp.).

(ii)

Defendant's claim is grounded solely upon alleged violations of RST law. His supporting Memoranda and Response make passing reference to the Fourth Amendment, but do not explain how it was implicated or, more importantly, violated by tribal officers not being commissioned at the time of his arrests. This is insufficient, as a matter of law, to

6

establish a Fourth Amendment infraction, much less warrant relief under the Exclusionary Rule. Hornbeck, 118 F.3d at 618. Such a Rule is a "blunt instrument" and "[f]or that reason courts should be wary in extending the [ ] [R]ule in search and seizure cases to violations which are not of constitutional magnitude." Id. at 618 (quoting United States v. Burke, 517 F.2d 377, 386 (2d Cir. 1975)). Inasmuch as Defendant has failed to allege a constitutional violation, his Motion to Suppress must be denied. Hornbeck, 118 F.3d at 618.

(iii)

Yet even assuming, arguendo, that Defendant has made a cognizable Fourth Amendment claim, he nonetheless cannot prevail on the merits of that claim and thus obtain relief.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures . . . ." U.S. Const. amend. IV. In Terry v. Ohio, 392 U.S. 1, 30 (1968), the Supreme Court held that a police officer can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity "may be afoot" even if the officer lacked probable cause. The officer though must have something more than a "inchoate and unparticularized suspicion or 'hunch.'" Id. at 27. The Fourth Amendment requires "some minimal level of objective justification" for making the stop. I.N.S. v. Delgado, 466 U.S. 210 (1984). Even so, the level of suspicion required "is considerably less than proof of wrongdoing by a preponderance of the evidence." United States v. Sokolow, 490 U.S. 1, 7 (1989).

Of course, probable cause, a standard more demanding than the level of suspicion necessary to sustain a Terry stop, see United States v. Montoya de Hernandez, 473 U.S. 531, 541 (1985), is required to justify a warrantless arrest, search and seizure, Wong Sun v. United States, 371 U.S. 471, 479 (1963).³ "Articulating precisely what 'reasonable suspicion' and 'probable cause' mean is not possible." Ornelas v. United States, 517 U.S. 690, 695 (1996). They are common sense, non-technical conceptions that deal with "'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" Illinois v. Gates, 462 U.S. 213, 231 (1983) (quoting Brinegar v. United States, 338 U.S. 160, 175 (1949)); see also Sokolow, 490 U.S. at 7-8. These two legal principles are not "finely-tuned standards" but instead are fluid concepts that take their substantive content from the particular contexts in which they are being assessed. Gates, 462 U.S. at 232, 235. The principle components of a reasonable suspicion or probable cause determination are the events which lead up to the stop, arrest or search and whether these historical facts, when viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion or probable cause. Ornelas, 517 U.S. at 696.

---

³While probable cause is required for both arrests and searches, the meaning of the term is not exactly the same. Each requires a showing of probabilities in somewhat different factual scenarios and thus one can exist without the other. In search and seizure cases, there must be substantial evidence that the items sought are connected with criminal activity and that these items will be found in the place to be searched. 2 W. LaFave, J. Israel, N. King & O. Kerr, Criminal Procedure, §3.3(a) at 106 (3d. ed. 2007). It is not necessary that a particular person be implicated in the crime under investigation. Id. at 106-07. By comparison, in arrest cases, there must be substantial evidence that a crime has been committed and that the person to be arrested committed it. Id. at 107.

The issue in the case at hand is whether there was reasonable suspicion to stop Defendant and probable cause to arrest him and search and seize evidence. This Court is satisfied that there was.

The evidence of record plainly shows that given what he had seen and been told, Cummings had a legitimate basis for making a traffic stop of Defendant and had the requisite probable cause to arrest Defendant for the tribal offense of driving under the influence of alcohol on October 29. Mot. Hrg. Tr. 432-38, 456-57, 460, 462, 464-67, 472-74; Mot. Hrg. Ex. G. There was also probable cause for the search and seizure of the box cutter Defendant had in his right pants pocket and the knife, ax handle, scissors and skewer that were found next to where Defendant had been sitting in the vehicle.[4] Mot. Hrg. Tr. 435-44, 454-55, 459, 475-79, 481-89; Mot. Hrg. Ex. G.

Waln likewise had good reason to stop Defendant and more than enough factual information to arrest him tribally for aggravated assault. Mot. Hrg. Tr. 280-81; Mot. Hrg. Ex. E. There being no Fourth Amendment violations in connection with Defendant's January 2 arrest, the photographs, taken of his bloody hands at the jail following the arrest, Mot. Hrg. Ex. E, are not tainted and may properly be used against him at trial.[5]

---

[4] The same is true of the pictures taken of the items seized as well as those taken of the vehicle. Because the search and seizure conducted was in accord with Fourth Amendment strictures, the photographs are not "poisonous fruit" that must be suppressed.

[5] It should be noted that tribal special agents attempted to interview Defendant later in the day on January 2. Mot. Hrg. Ex. E (Interview of Robert Lee Erickson by Ken Fisher). Defendant was read his Miranda rights and after being told that the agents wanted to talk to him about using a knife on Eli Antoine and A.W.K., the alleged victims named in Counts I-II and IV-V of the Indictment, Defendant indicated that he had "nothing to say." Id. The agents then terminated the interview and Defendant was escorted back to his jail cell. Id. Because Defendant invoked his
(continued...)

In view of this evidence, and the long-standing principle that Fourth Amendment reasonableness cannot be reduced to bright line rules, this Court is unable to conclude that the stops, arrests, searches and seizures conducted by tribal officers, even if not commissioned at the time, were unreasonable. See Becerra-Garcia, 397 F.3d at 1175. In doing so, the Court declines to embrace Defendant's request for a sweeping exclusionary rule based on the legal status of officers who readily believed that they had law enforcement authority and acted pursuant to it under color of tribal law. See id.; see also Hornbeck, 118 F.3d at 618. Stated another way, Defendant's claim that the officers lacked the authority necessary to function as tribal policemen does not transform their otherwise reasonable and constitutionally permissible acts into unreasonable ones. See Becerra-Garcia, 397 F.3d at 1175. Accordingly, the evidence gathered from and as a result of Defendant's October 29 and January 2 arrests is not subject to suppression under the Fourth Amendment.

II.

Defendant also makes a Fifth Amendment/Due Process claim, for the first time, in his Response to the Government's Supplemental Response.[6] He does not state how exactly the alleged violation of RST law infringed upon the federal due process protections guaranteed to him by the Fifth Amendment. His claim is therefore legally insufficient. Hornbeck, 118

---

[5](...continued)
Miranda prophylactic right to remain silent, and no inculpatory statements were obtained from him after he did so, there is nothing to suppress.

[6]Although the Due Process Clause of the Fifth Amendment does not apply to the conduct of tribal officers on an Indian reservation, the same standards are applicable to their actions under the ICRA, and in particular, §1302(8) thereof. Means v. Navajo Nation, 432 F.3d 924, 935 (9th Cir. 2005), cert. denied, 127 S.Ct. 381 (2006).

F.3d at 618. Even if it is not, the violations alleged do not rise to the level of Fifth Amendment transgressions. See Male Juvenile, 280 F.3d at 1023.

III.

Finally, Defendant seeks to prohibit the Government from offering into evidence, certain alleged prior bad acts. The acts, including the circumstances surrounding them, are detailed in investigative reports that are part of the record. See Mot. Hrg. Exs. F, G[7] and H. Defendant's Motion, insofar as it attempts to exclude evidence under Rule 404(b) of the Federal Rules of Evidence, is really a motion in limine, not a motion to suppress, and should be addressed to and ruled on by the trial court at a later time.[8] The trial court, of course, is free to pass on the admissibility of such evidence at this juncture, if it so chooses. But this Court has not been asked to nor been delegated the function of passing on the admissibility of such evidence. The Court, therefore, in an abundance of caution and to avoid overstepping its authority, declines to do so at this time.

---

[7]Although not all together clear, this Exhibit appears to relate not only to an alleged assault of Jonathan White, on October 29, but also to the alleged assault of Kendra Small Bear that is charged in Count III of the Indictment. Mention is made in the Exhibit of Defendant stabbing Small Bear, cutting her in the leg, neck and ear, "about a month" before January 2, 2008, see Interview of S.L.K. by Ken Fisher, but there is nothing more specific than this in any other reports or records now on file. Defendant, by virtue of moving to suppress the stop, arrest, search and seizure that occurred on October 29, apparently believes, or has received information from the Government, that he is alleged to have assaulted Small Bear "on or about" this date. If the alleged assault occurred at a different time, Defendant's Motion, to the extent that it seeks to suppress the events that took place on October 29, is nothing more than an "other act" in limine motion and should be denied for the same reasons discussed in Section III of this Report.

[8]In its Pretrial Order, the trial court fixed May 13, 2008 as the deadline for filing motions in limine. Docket No. 24.

IV.

Based on the foregoing discussion, it is hereby

RECOMMENDED that Defendant's Motion to Suppress, as well as the Supplement thereto, Docket Nos. 18, 29, be denied.

Dated this 18th day of April, 2008, at Pierre, South Dakota.

**BY THE COURT:**

**MARK A. MORENO**
**UNITED STATES MAGISTRATE JUDGE**

ATTEST:
JOSEPH HAAS, CLERK
BY: /Renee Clausen/ Deputy
(SEAL)

**NOTICE**

**Failure to file written objections to the within and foregoing Report and Recommendations for Disposition within ten (10) days from the date of service shall bar an aggrieved party from attacking such Report and Recommendations before the assigned United States District Judge. See 28 U.S.C. § 636(b)(1).**

12