UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. 08-30009-01-KES |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER ADOPTING |
| vs. | ) | REPORT AND |
| | ) | RECOMMENDATION OF |
| ROBERT L. ERICKSON, | ) | MAGISTRATE JUDGE |
| | ) | |
| Defendant. | ) | |

The indictment charges defendant, Robert L. Erickson, with three counts of assault with a dangerous weapon and two counts of assault resulting in serious bodily injury. In connection with these alleged assaults, Erickson was arrested on October 29, 2007, and January 2, 2008. Erickson moves to suppress evidence obtained during the course of the arrests. The court referred the motion to Magistrate Judge Mark Moreno pursuant to 28 U.S.C. § 636(b)(1)(A). Magistrate Judge Moreno recommends that this court deny Erickson's motions to suppress.

## STANDARD OF REVIEW

The court must make a de novo review "of those portions of the [Magistrate's] report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); see also United States v. Lothridge, 324 F.3d 599 (8th Cir. 2003); Jones v. Pillow, 47 F.3d 251, 253 (8th Cir. 1995). After a careful de novo review of the magistrate judge's

report and recommendation and a review of the record, the court accepts the report and recommendation of the magistrate judge as supplemented herein.

### DISCUSSION

In his motions to suppress, Erickson argues that the arrests and searches were invalid because the tribal officers who conducted them did not possess valid tribal commissions as required by tribal law, and therefore any evidence obtained must be suppressed. Erickson further argues that the evidence must be suppressed because the tribal officers did not have probable cause to effect the arrests.

The magistrate judge conducted a two-day evidentiary hearing and subsequently issued his report and recommendation. The magistrate judge found that the legality of the searches was properly analyzed under established Fourth Amendment jurisprudence, which offers protections identical to the Indian Civil Rights Act. United States v. Becerra-Garcia, 397 F.3d 1167, 1171 (9th Cir. 2005). The magistrate judge also rejected the government's contention that the tribal officers' acts could be evaluated as if they were private citizens, finding that the facts demonstrated that regardless of the status of their commissions, the officers were acting at the behest of the Rosebud Sioux Tribe (RST) Police Department. United States v. Smith, 383 F.3d 700, 705 (8th Cir. 2004). The defendant and the

2

government have not objected to these sections of the report and recommendation and they are hereby adopted by this court.

The magistrate judge next addressed defendant's contention that the tribal officers' expired commissions rendered the arrests unconstitutional. The tribal law at issue in this case is RST Ordinance No. 91-05, which requires all tribal officers to carry valid tribal commissions. Apparently unaware of the requirement that the commissions be renewed biannually, a significant number of RST tribal officers allowed their commissions to lapse. The magistrate judge found that even if the officers who arrested and searched Erickson were not acting in compliance with tribal law, the tribal law violation did not affect the constitutionality of defendant's arrests. Defendant objects to that portion of the report and recommendation.

It is well established that in a federal prosecution, challenges to the legality of a search and seizure are properly evaluated under federal Fourth Amendment standards. United States v. Hornbeck, 118 F.3d 615, 617 (8th Cir. 1997). In Hornbeck, the court held that "[a] court must examine the legality of a search by state officers as if made by federal officers." Id. This holding applies equally to tribal officers. Id. See also United States v. Male Juvenile, 280 F.3d 1008, 1023 (9th Cir. 2002) ("[W]e reject the contention that tribal law should govern the admissibility of statements in federal court. Federal law governs federal proceedings."). Further, in the Eighth Circuit, a Fourth Amendment analysis does not require reference to an

arrest's legality under state law. United States v. Bell, 54 F.3d 502, 504 (8th Cir. 1995); see also Virginia v. Moore, No. 06-1082, slip. op. (U.S. Apr. 23, 2008) (holding that the Fourth Amendment was not violated when state officers made an arrest in violation of state law). The government therefore argues that the court should only examine the officers' conduct for reasonableness under the Fourth Amendment, without regard to whether the officers were compliant with tribal law.

Defendant argues that the above cited authority is distinguishable from this case because here the tribal officers' actual authority to act as officers is in dispute. In Abbott v. City of Crocker, Missouri, 30 F.3d 994, 997 (8th Cir. 1994), an officer effected an arrest and subsequent search outside of city limits, despite his lack of authority to do so under Missouri law. The court found that the arrest and subsequent search did not violate the Fourth Amendment:

> [T]he question here is not whether the search was authorized by state law. The question is rather whether the search was reasonable under the Fourth Amendment. Just as a search authorized by state law may be an unreasonable one under that amendment, *so may a search not expressly authorized by state law be justified as a constitutionally reasonable one.*

Id. at 997 (emphasis in original).

The court finds the logic in Abbott to be applicable to this case. Like in Abbott, the reason the tribal officers' actions are in question is the result of the law of their sovereign. There is no dispute that the Rosebud Sioux

Tribe has the power to authorize tribal officers to enforce the law on their reservation. The Rosebud Sioux Tribe has the corresponding power to limit the term of its tribal officers, just like the state of Missouri has the power to limit the jurisdictional boundaries of where its officers can make arrests. These circumscriptions of power, however, are not constitutionally mandated. The tribe's failure to renew the tribal commissions, although it may result in activity violative of tribal law by the noncommissioned officers, does not render the conduct of those officers "unreasonable" and therefore unconstitutional under the Fourth Amendment.[1] Accordingly, the court finds that even assuming the officers involved in the arrests and searches of defendant did not possess valid RST commissions, their noncommissioned status is not relevant to the Fourth Amendment inquiry in this case.[2] The

---

[1] In Abbott, the court noted that in some situations whether an officer complied with state law might be relevant, though not dispositive, in determining whether police conduct was reasonable under the Fourth Amendment. 30 F.3d at 998. See also United States v. Baker, 16 F.3d 854, 856 (8th Cir. 1994). Although it may be relevant to assist in discerning a standard in some cases, such as whether the level of force used was reasonable, the court finds that whether the officers in this case technically complied with the RST ordinance is not relevant to this court's Fourth Amendment determination.

[2] In the report and recommendation, the magistrate judge found that two of the officers who conducted the stops and arrests of the defendant were properly commissioned by the Rosebud Sioux Tribe. Docket 41 at 4-5. Defendant objects to this finding. Because the court finds that whether or not the tribal officers complied with tribal law with respect to the status of their commissions is not relevant to this court's Fourth Amendment analysis, the court need not reach the factual issue of whether the relevant tribal officers were in fact commissioned.

report and recommendation of Magistrate Judge Moreno is adopted regarding this issue as supplemented.

The court now turns to defendant's contention that both the October 29, 2007, and January 2, 2008, arrests and subsequent searches were made without probable cause.  The October 29, 2007, seizure was the result of a traffic stop by RST tribal officer William Cummings.  At the evidentiary hearing, Cummings testified that while he was on patrol that day he observed a vehicle, which was later determined to be driven by defendant, driving in an erratic fashion.  Mot. Hrg. Tr. 432-33.  While he was turning his vehicle around to investigate, he received a call from dispatch informing him that Beverly Brave Hawk had reported that defendant was attempting to fight Jonathan White with a knife.  Id. at 433-35.  Cummings then noticed that the van he had seen driving erratically earlier was parked at the Brave Hawk residence.  Id. at 435.  Cummings parked his vehicle at the Brave Hawk residence and approached defendant and attempted to talk with him.  Id. at 436-37.  Cummings observed defendant making suspicious movements with his hands and ordered him out of the vehicle.  Id.  Cummings then checked defendant's person for weapons and recovered a box cutter in defendant's possession.  Id. at 437-39. After observing signs of intoxication, Cummings placed defendant under arrest for suspicion of driving under the influence of alcohol.  Id.  A

knife and other physical evidence were found during a search of the van. Id. at 439-44.

The magistrate judge found that Cummings had probable cause to make a traffic stop of defendant's vehicle, and further that Cummings had the authority to conduct the search of defendant's person and his vehicle. Defendant objects to this portion of the report and recommendation of the magistrate judge. After reviewing the record, the court finds that Cummings had probable cause to stop defendant's vehicle after observing him drive erratically. Further, defendant's actions during his initial interaction with Cummings were sufficient to give the officer the authority to initiate a "protective seizure and search for weapons" under Terry v. Ohio, 392 U.S. 1, 29-30 , 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). Finally, as a result of the Terry stop, Cummings developed probable cause to arrest defendant for suspicion of driving under the influence and therefore the search of his vehicle incident to arrest did not violate the Fourth Amendment. New York v. Belton, 453 U.S. 454, 101 S. Ct. 2860, 69 L. Ed. 2d 768 (1981). Accordingly, the court finds that the evidence obtained during the October 29, 2007 search and seizure was obtained constitutionally and defendant's motion to suppress that evidence is denied.

With regard to the January 2, 2008 search, defendant's motions to suppress do not allege that the officers lacked probable cause to conduct the January 2 search. Rather, defendant relies on his argument that

because the arresting officers did not have RST commissions their actions violated the Fourth Amendment. Docket 19 at 4-5. At the evidentiary hearing, counsel for defendant confirmed this stating "the only suppression motion that I have other than this tribal commission matter involves an arrest and search without probable cause on October 29th of 2007." Mot. Hrg. Tr. at 277-78. Counsel therefore represented to the magistrate judge that he was not going to challenge the factual circumstances of the January 2 arrest.

In his report and recommendation the magistrate judge found that RST officer Waln had probable cause to arrest defendant on suspicion of aggravated assault on January 2, 2008. Despite defendant's previous assertion that he was not going to challenge the factual circumstances of the January 2 arrest, defendant now objects to this portion of the report and recommendation. After reviewing the testimony of Waln, the court finds that he had probable cause to stop defendant. Waln was at the scene of an alleged assault and persons at that scene identified Erickson as the person who committed the assault. Mot. Hrg. Tr. 280-281. Waln then observed defendant near the scene of the crime. Id. at 280. Under these circumstances, the court finds Waln had probable cause to arrest defendant. Because the court finds defendant's January 2, 2008, arrest to be constitutional, to the extent defendant moves to suppress any evidence obtained as a result of that seizure, the motion is denied.

8

The magistrate judge also recommended that defendant's Fifth Amendment claim be dismissed. Defendant objects to that portion of the report and recommendation. After reviewing defendant's objections and his original motion, defendant has failed to set forth any authority or argument regarding the basis for his Fifth Amendment claim. The court therefore adopts the report and recommendation of the magistrate judge with respect to that claim and the claim is therefore denied.

Finally, defendant objects to the magistrate judge's refusal to rule on evidence of prior bad acts that the government may seek to offer at trial. The magistrate judge found that defendant's motion was akin to a motion in limine under Rule 404(b) and therefore declined to examine the admissibility of that evidence. Defendant's primary contention with regard to the other bad acts evidence is that it should not be admitted because at least some of the evidence was obtained by RST officers who did not possess valid tribal commissions. As discussed above, this court does not find that operating under an expired tribal card results in a Fourth Amendment violation. Therefore, to the extent defendant's motion is premised on that argument, defendant's motion to exclude is denied. If the government seeks to admit any of the evidence at issue pursuant to Rule 404(b), the court will determine its admissibility prior to trial or in the context of a motion in limine.

Based on the foregoing, it is hereby

ORDERED that the court adopts the Report and Recommendation of the Magistrate Judge as supplemented herein, and defendant's motions to suppress (Dockets 18 and 29) are denied.

Dated May 8, 2008.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
CHIEF JUDGE